```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                           CENTRAL DIVISION
                        LEXINGTON, KENTUCKY




LEXINGTON H-L SERVICES, INC.,    ) Lexington Civil
doing business as                ) Action No. 17-154
LEXINGTON HERALD LEADER,         )
                                 )
     Plaintiff,                  )
                                 ) At Lexington, Kentucky
-vs-                             )
                                 )
LEXINGTON-FAYETTE                ) March 27, 2018
URBAN COUNTY GOVERNMENT,         ) 10:35 a.m.
                                 )
     Defendant.                  )



 TRANSCRIPT OF TELEPHONIC CONFERENCE HEARING PROCEEDINGS
          BEFORE THE HONORABLE KAREN K. CALDWELL
             UNITED STATES DISTRICT CHIEF JUDGE





Court Reporter:              PEGGY W. WEBER, RPR
                             Official Court Reporter
                             U.S. District Court
                             P.O. Box 362
                             Lexington, Kentucky  40588
                             (859) 421-0814

Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

```
 1  Appearances of Counsel:

 2  On behalf of Plaintiff:    MARK J. PRAK, ESQ.
                               Brooks Pierce McLendon
 3                             Humphreys and Leonard, LLP
                               P.O. Box 1800
 4                             Raleigh, North Carolina  27602

 5  -and-                      JOHN A. BUSSIAN, III, ESQ.
                               The Bussian Law Firm, PLLC
 6                             150 Fayetteville Street Mall
                               17th Floor
 7                             Wachovia Capitol Center
                               Raleigh, North Carolina  27601
 8
    -and-                      JEFF NOBLES, ESQ.
 9                             Smith Haley Nobles
                               3700 Buffalo Speedway
10                             Suite 520
                               Houston, Texas  77098
11
    -and-                      ROLAND PETER MERKEL, ESQ.
12                             269 West Main Street
                               Suite 600
13                             Lexington, Kentucky  40507

14  On behalf of Defendant:    KEITH MOORMAN, ESQ.
                               Frost Brown Todd, LLC
15                             250 West Main Street
                               2800 Lexington Financial Center
16                             Lexington, Kentucky  40507

17

18

19

20

21

22

23

24

25
```

1      (Whereupon, the Telephonic Conference Hearing
2 proceedings commenced on Tuesday, March 27, 2018, at
3 10:35 a.m., on the record in chambers, as follows.)
4            THE COURT:  We'll be on the record in
5 Lexington Civil Action Number 17-154.
6            I apologize for the delay.  We were
7 experiencing some technical difficulties.
8            Who is on the line for the Lexington Herald?
9            MR. BUSSIAN:  John Bussian, Your Honor, along
10 with Mark Prak.  Both of us have appeared before you
11 earlier in the case.
12            And also, but not yet admitted for this case,
13 is Jeff Nobles who's joined our team.
14            THE COURT:  All right.  Mr. Nobles, thank you.
15            Mr. Bussian, and Mr. Prak.
16            Who is on --
17            MR. MERKEL:  Your Honor, excuse me.
18            THE COURT:  Yes.
19            MR. MERKEL:  This is Roland Merkel, and I'm
20 also on for the plaintiffs.
21            THE COURT:  Mr. Merkel.
22            MR. BUSSIAN:  I'm sorry, Roland, I didn't know
23 you were on.
24            THE COURT:  All right.
25            MR. MERKEL:  That's all right.  That's all

1 right.

2 THE COURT: Is anyone else on the line for the
3 plaintiff?

4     (No response)

5 THE COURT: All right. For the
6 Lexington-Fayette Urban County Government?

7 MR. MOORMAN: Your Honor, this is
8 Keith Moorman.

9 THE COURT: Mr. Moorman.

10 Thank you for making yourselves available this
11 morning.

12 This matter is before the Court on the renewed
13 motion for a preliminary injunction filed on behalf of
14 the Lexington Herald Leader.

15 I have received the motion and the brief in
16 opposition.

17 And, you know, I just have to tell you, I
18 think in this case the government is right. This case
19 was reversed. The preliminary injunction was vacated, so
20 maybe I'll allow you-all to try to persuade me,
21 Mr. Bussian and Mr. Prak, as to how this Court would
22 enter preliminary relief based on the Sixth Circuit's
23 ruling.

24 MR. BUSSIAN: Well, Your Honor, I think where
25 we're at in this case is that the Sixth Circuit, as you

1  know, reversed and vacated the injunctive relief, but
2  that means it didn't dismiss the case, so we're back in
3  front of you on the track, we believe, toward permanent
4  relief.  And at some point there needs to be a trial on
5  the merits.
6             So all we're trying to do here, and you can
7  see from the papers, even Mr. Moorman's papers, track an
8  understanding that the Herald Leader has with the
9  government to stay everything until June 1st to give us a
10 chance to file sur petition.
11            But ultimately what we're trying to do is to
12 get back in front of the Court for a trial on the merits
13 seeking permanent injunctive relief.
14            So my thought, suggestion, at this point is if
15 there's a way we can get that scheduled and get a stay to
16 allow everything to be made stayed until then.
17            The government's already conceded that there's
18 no harm, no foul essentially in getting to June 1st.
19 Maybe with the schedules that all the lawyers have right
20 now we could do something in early June, whatever the
21 Court's pleasure might be in that regard.
22            But I think the point here is we could -- we
23 believe we could go back and try to renew this motion for
24 preliminary injunctive relief and have another
25 evidentiary hearing if the Court were inclined to do

1 that.

2 But at a minimum we need to -- we believe and
3 we request the chance to have a trial date set on our
4 claims for permanent injunctive relief, and all we -- all
5 we're humbly asking is to have the status quo preserved
6 until that time.

7 THE COURT: Very well. Mr. Moorman?

8 MR. MOORMAN: Your Honor, as I said in my
9 response, we understood that the Herald wanted to take a
10 run at the Supreme Court, and the mayor in conversation
11 with Rufus Friday, the Herald Leader, agreed that the
12 City would not enforce the ordinance so that the
13 Herald Leader could petition for cert.

14 But that's different from what I hear
15 Mr. Bussian asking for now, which would be an unlimited
16 stay of enforcement until some time in the future when
17 there's going to be a trial on the merits. We do oppose
18 that.

19 If we're going to go forward in this court
20 with discovery and a trial, then we would like to start
21 enforcing the ordinance. We can't just put off
22 enforcement indefinitely while we consider what's going
23 to happen down the line.

24 THE COURT: Well, having heard your
25 representations, the Court understands that the Herald

1  has a right to a trial on the merits of the case and on
2  whether or not a permanent injunction should issue.
3           However, this Court attempted to maintain the
4  status quo of this case by granting a preliminary
5  injunction.
6           That went before the Sixth Circuit Court of
7  Appeals.  The Court said this Court abused its discretion
8  in granting that preservation of the status quo, and I
9  think that it would be in contravention of that Court's
10 order, reversal and vacation, of this Court's injunction
11 to try to preserve the status quo by issuing yet another
12 injunction disguised as a stay.
13          So I will deny the request for relief to
14 maintain the status quo during the period -- pendency of
15 this litigation.
16          Nevertheless, recognizing the interests that
17 are involved, the Court will endeavor to get this matter
18 to a trial, to the extent the parties need one, as
19 quickly as possible.
20          So toward that end, the Court is pretty well
21 booked, but I do have some time the first week of June,
22 June the 4th, but I think you could get bumped by a
23 criminal case.  So it probably would have to be
24 June 25th.
25          Is the plaintiff available on June 25th?

```
 1                MR. BUSSIAN:  We're clicking our calendars,
 2   Your Honor.
 3                THE COURT:  All right.
 4                MR. BUSSIAN:  But we will do our darnedest to
 5   be available at the Court's convenience.  I mean, we
 6   will -- we will one way or another make ourselves
 7   available.
 8                THE COURT:  All right.
 9                MR. NOBLES:  With the number of lawyers we
10   have on the case, Your Honor, we can be available on the
11   25th.
12                THE COURT:  All right. Mr. Moorman, are you
13   available?
14                MR. MOORMAN:  Yes, Your Honor, I'm available.
15                THE COURT:  All right.  Then we'll set a trial
16   date June 25th.  We won't start until 1 o'clock.  That
17   will give us some time on the morning before trial.
18                Now, has the Herald Leader requested a
19   jury trial, or is this a bench trial?
20                Mr. Bussian, do you remember?
21                MR. BUSSIAN:  A bench trial, Your Honor.
22                THE COURT:  Very well. Now, what kind of
23   discovery do you envision, Mr. Bussian?  What sort of
24   issues do you think?  I mean, we're looking at what the
25   Sixth Circuit said were the deficiencies in the
```

1  plaintiff's case, but what kind of discovery do you
2  envision requiring of the City?
3              MR. PRAK:  Well, Your Honor, this is Mr. Prak.
4              I believe that we can do a brief request for
5  admissions and then follow up on that with whatever
6  targeted deposition or depositions might be necessary.
7  I -- I do -- I don't -- I guess what I would say is one
8  of the things the Sixth Circuit said was the
9  Sixth Circuit said that you -- the District Court failed
10 to consider an additional factor and develop this
11 balancing test.
12             And so we would -- we would most assuredly
13 want discovery as to the bona fides of the
14 government's -- the bona fides to the government's
15 interest; that is, their suggestions that the merits of
16 and reason for their ordinance.
17             In the case cited by the Sixth Circuit, it
18 says, "Expense, however, cannot be considered in
19 isolation.  It must be balancing against the harms that
20 can arise when cheap and efficient methods of circulating
21 written materials are abused."
22             So we would need to probe.  Since that was the
23 Sixth Circuit's finding of deficiency of a
24 District Court's order, we would want to be able to probe
25 whether, in fact, there had been any abuse because the

1  ultimate balancing test to be applied was the test that
2  Your Honor applied supplemented by this new factor that
3  the Sixth Circuit found.  So we would want to probe the
4  bona fides of those facts.
5           THE COURT:  But when you consider that the
6  Sixth Circuit found that basically visual blight, there
7  was no argument to the contrary presented, and that --
8  that you can take very little evidence on that.  That's
9  an easy burden to make when you consider litter
10 reduction, that that can also be proved and demonstrated
11 through data from other cities.
12          And I think it was the only factor that we
13 didn't look at really was any evidence of interference of
14 private property, as I recall what the opinion said.  It
15 sounds to me like the circuit has already pretty much
16 said that the City has sort of made its burden, and that
17 this Court was just wrong in the way it weighed them.
18          MR. PRAK:  Well, Your Honor, with respect I
19 don't believe that that is so.  I believe that there has
20 to be actual evidence of that, and we've not had the
21 chance to test the bona fides of the showing made at the
22 preliminary injunction stage.  We would always be
23 entitled to do that.  I mean, a preliminary injunction is
24 not a finding of fact and doesn't become the law of the
25 case.

1                 So we would want the ability to test the
2     bona fides.  We don't believe there's any case of visual
3     blight in Lexington, not that it -- not that's been
4     demonstrated or proved, and we would need the ability to
5     test that, as well as any other raison d'etre offered by
6     the -- by the permit for this ordinance.
7                 THE COURT:  So, you know, what I hear you
8     saying is that you're going to need some requests for
9     admissions and maybe five depositions.  I'm just trying
10    to manage the discovery here in a way that is not going
11    to be --
12                MR. PRAK:  Yes, ma'am.
13                THE COURT:  -- unduly burdensome on either
14    party.
15                MR. PRAK:  Yes, ma'am.
16                THE COURT:  So is that about what you think
17    you would need?
18                MR. PRAK:  I think that's right, Your Honor.
19    I think we can live with that.
20                THE COURT:  Okay.  Mr. Moorman, from the
21    defense side where do you see your case development
22    going, and what kind of discovery do you see that the
23    government might need?
24                MR. MOORMAN:  Well, Your Honor, that's
25    difficult to address because I believe that the

1  Sixth Circuit has already concluded, as you suggested,
2  that the City has met its burden.  And so the evidence
3  was in the videotapes that we produced and in the
4  affidavits that have already been produced.
5           And I agree if the Herald Leader wants to
6  depose the chief of police and the Department of Public
7  Safety and basically say did you really mean that when
8  you put it in your affidavit, I suppose they have that
9  right.
10          But I don't know what other -- when they say
11 test the bona fides, that's all on the records.  So I'm
12 not sure where they're going with that.
13          THE COURT:  All right.
14          MR. MOORMAN:  As far as -- I think we've
15 established everything, but if we're going to go forward,
16 I would like to request all of the financial information
17 for the Herald Leader related to the community news, what
18 do they charge for it, the representations made about how
19 it's going to be delivered.  Have they sought any -- in
20 the past or currently any bids on porch delivery?  And if
21 so, how does that cost differ from the other?
22          Again, I think the Sixth Circuit said that
23 didn't matter and that the City has proven its case.  But
24 if we're going to open up whether there is litter and
25 blight from throwing a million of these on lawns and

1  driveways, then -- and have a trial on it, then I think I
2  do need some information about their financial interest.
3  　　　　　THE COURT:  All right.  It just seems to me
4  that we could be spending a lot of money here to not get
5  very far.  And I guess to me from the plaintiff's
6  perspective, and I'll let any of the counsel speak to
7  this, I mean, what -- how do you propose to test these
8  bona fides?  What do you hope to get or prove by way of
9  doing that?
10  　　　　　MR. BUSSIAN:  Oh, we want to find out the
11  factual basis on which the government made its findings
12  and test the bona fides of them.  I want to know whether
13  there were clogged storm drains.  This is not simply done
14  by intuition, Your Honor.  Surmise and speculation
15  doesn't cut it.  I want to know whether they actually
16  observed clogged storm drains that were the result of the
17  Lexington Herald Leader's products.  And I don't believe
18  for a moment that's true.
19  　　　　　THE COURT:  All right.
20  　　　　　MR. BUSSIAN:  And I'll be right interested to
21  find out whether any of that was actually involved as a
22  matter of fact.  And I'll have plenty of questions to
23  test -- to test the merits of the underlying facts on
24  which this -- this was based.
25  　　　　　And as Your Honor knows, and has ruled, the --

1 the Sixth Circuit didn't grant summary judgment for the
2 defense here. There's no judgment been granted for the
3 defense. We're going to evaluate the basis on which the
4 government passed this ordinance, what their goal and
5 purpose was, and what their facts on which it was based
6 were.
7         THE COURT: All right. It sounds to me
8 that -- that what we might be able to do and what I'm
9 trying to do here is to avoid unnecessary costs on the
10 part of both the plaintiff and the defendant in getting
11 this matter ready for final determination by this Court.
12         It seems to me that the depositions that you
13 take might also serve as trial depositions. In other
14 words, that we need not take a bunch of depositions and
15 have these people come in and testify live.
16         MR. BUSSIAN: Since we're doing a bench trial,
17 Your Honor, I think that could conduce to great
18 efficiency.
19         THE COURT: All right. All right. Do you
20 agree with that, Mr. Moorman?
21         MR. MOORMAN: Yes, Your Honor. I think
22 keeping this as straightforward and as simple as
23 possible, it's in the best interest of both parties.
24         THE COURT: All right. Well, what I'm going
25 to do is I'm going to let you-all work together, because

1  despite the seriousness of the issues under contention,
2  it seems that you-all work well together and
3  professionally.  So I'm going to keep in mind that we
4  expect from the plaintiff to serve some requests for
5  admissions as quickly as possible.
6           Once the defendant has responded to those, the
7  plaintiff may take no more than five depositions.  Then
8  we'll use those as both discovery and evidentiary
9  depositions.
10          Mr. Moorman, it sounds to me like you're going
11 to request some documents regarding the Herald Leader's
12 financial information, and that maybe you would upon
13 receipt of that information want a few depositions, or a
14 deposition.
15          Is that a fair assessment of where you would
16 be going?
17          MR. MOORMAN:  I think so, Your Honor.  I think
18 that's the only issue that the government didn't have
19 before it, and it seems to be the issue that the
20 Herald Leader has placed the most emphasis on, that they
21 are not going to be able to effectively maintain the
22 community news if they have to deliver to porches.  So I
23 would like to find out more about that.
24          THE COURT:  All right.  Well, I'll just limit
25 both sides to no more than five depositions.  I hope you

1 can do it in two or three, but no more than five to be
2 noticed.
3             And I know you're all very busy so if we're
4 going to get this thing done on or before June 25th, then
5 we will need for you to cooperate and try to get the
6 information to one another as quickly as possible.
7             In the event that you can get the information
8 together quickly, and submit it on briefs, we could have
9 oral argument on the 25th rather than a trial with
10 witnesses.
11            Does that seem reasonable, Mr. Bussian,
12 Mr. Prak?
13            MR. BUSSIAN:  Yes, Your Honor, it does.
14            THE COURT:  Mr. Moorman?
15            MR. MOORMAN:  Yes, Your Honor.
16            THE COURT:  Okay.
17            MR. MOORMAN:  I do -- I do have before we go
18 though, I would like to bring up one matter.
19            THE COURT:  Oh, you may, yes.
20            MR. MOORMAN:  Well, this is anecdotal so I
21 apologize in advance, but, you know, since this case has
22 come up when I have talked to friends and neighbors about
23 it, I will have people say, well, I'm so glad that
24 something is being done about that.  I hate that thing
25 being in my yard.

1          Now, I don't know -- I mean, if they can only
2 take five depositions, you know, each individual person
3 is going to say that, but there could be 30 or 40 or
4 50 or 150.  I mean, that's the concern I have.
5          Now, if all they want is the council members
6 say I have 33 complaints, we can do that.  But what I'm
7 trying to ward off an evidentiary objection if we're now
8 just -- are they going to say, well, that's hearsay, you
9 had 35 people, do we have to call all 35 in to testify?
10 Just as a practical matter where this might be going.
11          THE COURT:  All right.
12          MR. BUSSIAN:  At the end of the day we'll find
13 out what we find out, Your Honor.  But our desire is not
14 to bore -- or burden the Court.
15          Frankly, one of the reasons we want to use
16 requests for admissions is we believe we can focus the
17 Court's attention on the facts of that matter.  And if we
18 have to be put to our proof by the defense, and the
19 defense is proven wrong, then the defense can bear the
20 cost of that proof.
21          So we'll -- we'll be perfectly able to be
22 narrowly focused in our attempt to find out what the
23 motivation for the ordinance was.
24          THE COURT:  Well, and what I can envision here
25 is if I'm on the Fayette County City Council or

1  Lexington-Fayette County City Council, that I may get
2  30 calls or 40 calls or people coming up to me at lunch
3  and making these representations to me, but I'm not going
4  to be taking names and logging them.
5            So I understand Mr. Moorman's concern about
6  that.  So, I guess, we'll just have to cross that bridge
7  when we get to it.  But if that's the kind of proof
8  you're looking for, I think Mr. Moorman is correct we
9  ought to anticipate that now.
10           So do you expect that to be part of your
11 requests?  I mean, again, we're limiting it to five.
12           MR. BUSSIAN:  Well, I don't know what we'll
13 find, Your Honor, but at the end of the day we hadn't --
14 we hadn't contemplated attempting to find that out.  That
15 may be what the witnesses say to us; it may not be what
16 they say to us.  I would rather let the witnesses speak
17 and then determine whether there's any -- any issue.  I
18 don't know that I've ever had a problem asking a witness
19 a question and not being able to ultimately get it to a
20 point where it's capable of being understood by the
21 finder of fact.
22           THE COURT:  Well, we'll -- we'll just go from
23 here.
24           Mr. Moorman, thanks for raising that issue.
25 I'll be mindful of it, and we'll just await your

```
 1  submissions.
 2              If we're going to have oral arguments on it,
 3  what I would prefer to do is in mid June have
 4  cross-briefs with just an opportunity for the other side
 5  to reply.
 6              So maybe let's have those due on -- oh, I'd
 7  need them couple weeks, June 11th, and then literally a
 8  three-day window for brief reply.  Because I'm sure
 9  you're all not going to leave anything on the floor in
10  your original submissions.  But, you know, and I'm not --
11  I think we have 25-page limit under the rules, and that
12  should be enough for both sides.
13              And certainly you can reference the
14  depositions that you've taken.  It is helpful if you
15  reference page and line number.  That will help me look
16  to the specific issues that you raise in your briefs.
17              Is there anything else for the plaintiff that
18  we might do today to advance this case efficiently and
19  inexpensively to the extent possible?
20              MR. BUSSIAN:  I don't believe so, Your Honor.
21  I think this has been quite helpful.
22              THE COURT:  Mr. Moorman?
23              MR. MOORMAN:  No.  I think this has been
24  helpful, Your Honor.
25              Thank you.
```

```
 1            THE COURT:  All right.  Well, if you-all need
 2  this Court's intervention or guidance, just give me a
 3  call, and we can get together by telephone in the interim
 4  period.
 5            And I'll look forward to receiving your
 6  submissions in June.
 7            Thank you again.
 8            That concludes this hearing.
 9            MR. BUSSIAN:  Thank you, Your Honor.
10            THE COURT:  And we'll be off the record.
11            MR. MOORMAN:  Thank you, Your Honor.
12       (Whereupon, the Telephonic Conference Hearing
13  proceedings concluded at 10:55 a.m.)
14                    C E R T I F I C A T E
15       I, Peggy W. Weber, certify that the foregoing is a
16  correct transcript from the record of proceedings in the
17  above-entitled matter.
18
    September 26, 2018             s/Peggy W. Weber
19     DATE                         PEGGY W. WEBER, RPR
20
21
22
23
24
25
```